IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 29429-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROBERT RUSSELL TRAINOR, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Robert Trainor appeals his convictions for three counts of child

rape and two counts of child molestation, arguing that he was denied a fair trial due to

ineffective assistance of counsel and prosecutorial misconduct. He also challenges

several of the trial court's evidentiary rulings as well as the denial of his request for a

new trial. Finding no error, we affirm.

BACKGROUND

Jamie Lynn Sanders has four daughters, including C.M.S., A.N.S., and D.L.S.[1]

She also has a stepdaughter, M.A.S. In January 2010, Ms. Sanders found a suicide note

in A.N.S's bedroom. The letter stated that Robert Trainor, who is Ms. Sanders'

---

[1] Ms. Sanders' fourth daughter is not involved in this case.

stepfather, had started sexually abusing A.N.S. sometime in early 2006. At the time the letter was discovered, C.M.S. was 13, A.N.S was 12, D.L.S. was 10, and M.A.S. was 14.

After discussing the note with A.N.S., Ms. Sanders sent a Facebook message to her 20-year old cousin, E.M.W., who lived in Spokane. In the message, Ms. Sanders told her that A.N.S. was claiming to have been sexually molested by a close family member, and she asked E.M.W. if anything like this had happened to her. E.M.W. called Ms. Sanders to tell her she was driving to Ms. Sanders' home in the Tri-Cities.

Within the next several hours, C.M.S., D.L.S., M.A.S., and E.M.W. all reported that Mr. Trainor had sexually abused them. According to each of the girls, none of them discussed the alleged abuse with each other before reporting it.

Mr. Trainor was arrested the following day and interviewed by Detective Mathew Clarke. The State charged Mr. Trainor with one count of rape of a child in the first degree, two counts of rape of a child in the second degree, one count of child molestation in the first degree, and one count of child molestation in the third degree. There was one count for each of the five girls.

Each girl testified at trial. A.N.S. testified that Mr. Trainor started to molest her in 2006. She would give him back rubs and then he would place her hand on his male private part. She testified that on multiple occasions Mr. Trainor digitally penetrated her, but that she never told anyone because she did not think anyone would believe her. She

2

also testified that in August or September 2009 he digitally penetrated her and performed oral sex on her. Afterwards she told her best friend, K.H., about the abuse.

C.M.S. testified that Mr. Trainor began molesting her when she was 11 years old. He would have her give him back rubs and he would rub her stomach and chest. She also testified that in November of her seventh grade year Mr. Trainor touched her vagina.

D.L.S. testified that when she was seven years old, she was staying at Mr. Trainor's house and sleeping in his bed when Mr. Trainor touched her and digitally penetrated her.

M.A.S. testified that in December 2009 Mr. Trainor rubbed her stomach in a way that made her uncomfortable and put his hand on her breast underneath her bra.

E.M.W. testified that Mr. Trainor began abusing her in 2002 when he digitally penetrated her. The abuse continued and escalated in 2006 with Mr. Trainor penetrating her with his penis. She testified that after she graduated from high school in 2008, she moved away and tried to avoid any further contact with Mr. Trainor.

The jury on August 16, 2010, found Mr. Trainor guilty on all counts. On September 29, after denying Mr. Trainor's motion to arrest judgment and grant a new trial, the court sentenced Mr. Trainor to a total of 280 months. The judgment and sentence ordered restitution in the amount of $539.99 to Crime Victims Compensation. At the time of sentencing neither the prosecutor nor the defense counsel knew what this

restitution amount pertained to, but after defense counsel requested a breakdown of the restitution charges they discovered that it was for a sexual assault exam.

In July 2011, appellate counsel for Mr. Trainor contacted the prosecutor's office to inquire about the sexual assault exam. Detective Clarke indicated that he ordered a sexual assault exam for A.N.S., which occurred on February 2, 2010. The exam report was made available to the prosecutor on October 4, 2011, and was promptly given to defense counsel. The report concluded that the findings for any abuse were negative, but noted that this finding does not prove or disprove that the alleged abuse occurred.

Mr. Trainor timely appealed.

## ANALYSIS

This appeal challenges the effectiveness of trial counsel and also alleges the prosecutor engaged in misconduct. Mr. Trainor also argues that the trial court erred in several of its evidentiary rulings and by denying his request for a new trial. Each is addressed in turn.[2]

*Ineffective Assistance of Counsel*

Mr. Trainor challenges his trial counsel's performance, alleging nine instances of ineffective assistance of counsel. Since Mr. Trainor fails to establish that actual prejudice

---

[2] Mr. Trainor also raises a cumulative error argument, but because we conclude there were no errors, there is no basis for finding cumulative error.

resulted from any of these alleged failures, he has not established that trial counsel provided ineffective assistance.

Ineffective assistance of counsel claims are adjudged under the standards of *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). That test is whether or not (1) counsel's performance failed to meet a standard of reasonableness, and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-92. In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Id.* at 689-91.

Mr. Trainor first attacks trial counsel's failure to file a CrR 4.7(e) motion requesting any information or documentation dealing with physical, medical, or mental examinations. CrR 4.7(e) allows the court to grant a defendant access to information beyond what the prosecutor is specifically obligated to disclose under the discovery rules. *State v. Norby*, 122 Wn.2d 258, 266, 858 P.2d 210 (1993). Mr. Trainor has failed to show that trial counsel's performance was deficient for failing to file a CrR 4.7(e) motion because the prosecutor was already under a duty to disclose those materials under CrR 4.7(a)(iv). This claim is without merit.

Mr. Trainor also argues trial counsel was ineffective for failing to request a bill of particulars seeking more specificity with regards to the dates of the alleged abuse in the formal charges.[3]

A criminal defendant has "a constitutional right to be informed of the nature and cause of the accusation against him" to enable him to prepare a defense. *State v. Bergeron*, 105 Wn.2d 1, 18, 711 P.2d 1000 (1985) (citing U.S. CONST. amend. VI; CONST. art. I, § 22 (amend. 10)). The purpose of a bill of particulars is to "amplify or clarify particular matters essential to the defense." *State v. Holt*, 104 Wn.2d 315, 321, 704 P.2d 1189 (1985).

No bill of particulars is required if the particulars are already in the charging document or if the information called for has been provided by the government in some other satisfactory form. *State v. Noltie*, 116 Wn.2d 831, 845, 809 P.2d 190 (1991). Whether or not to grant a request for a bill of particulars is a matter left to the discretion of the trial court. *Id.* at 844. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

---

[3] Additionally, Mr. Trainor argues that the long time frames in the charging document exposed him to double jeopardy. However, Mr. Trainor was protected from the threat of double jeopardy because the evidence was sufficiently specific as to the act

6

Mr. Trainor has not established that trial counsel was deficient for failing to request a bill of particulars or that the motion likely would have been granted. The information informed Mr. Trainor that he was being charged with three counts of rape of a child and two counts of child molestation, with each charge corresponding to one of the five girls. The information did not include the specific dates of each alleged offense because the girls could not remember the specific dates, but instead alleged that each count of abuse occurred within a specified time frame. It was not necessary for the State to give the exact dates for each alleged offense. *State v. Carver*, 37 Wn. App. 122, 126, 678 P.2d 842 (1984). Mr. Trainor was informed of the nature and cause of the accusations against him. Furthermore, the lack of specificity did not prejudice Mr. Trainor because an alibi defense would not have been reasonable in these circumstances and therefore specific dates were not necessary to the defense. It does not appear that there was any additional information to disclose in a bill of particulars.

Mr. Trainor's third argument is that trial counsel erred in failing to file a motion to sever the counts. He claims that defense counsel should have moved to sever all the counts, or at least sever the count of second degree rape of E.M.W. from the other counts.

---

charged for each girl within the charged time frames. *State v. Newman*, 63 Wn. App. 841, 851, 822 P.2d 308 (1992).

Offenses that are permissibly joined under CrR 4.3(a) may be severed if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). The decision whether to grant a motion to sever counts is within the trial court's discretion. *State v. Bryant*, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998). When determining whether to grant a request to sever counts, a court considers (1) the strength of evidence on each count, (2) the clarity of the defenses on each count, (3) the court's instructions to consider each charge separately, and (4) the admissibility of the evidence of one charge in a separate trial of the other charge. *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).

To prevail on an ineffective assistance claim based on failure to move to sever counts, the defendant must show deficient performance by counsel and demonstrate prejudice by showing both that the motion would likely have been granted and a reasonable probability that the outcome of the proceeding would have been different had the motion been granted. *State v. Sutherby*, 165 Wn.2d 870, 884, 204 P.3d 916 (2009).

Mr. Trainor has failed to satisfy the *Sutherby* standard. The State's evidence was equally strong on each count and the defense to each count was general denial, so trying the counts together did not present a problem of conflicting defenses. The court specifically instructed the jury that it had to decide each count separately and that the verdict on one count should not control the verdict on any other count. It is also likely

8

that evidence of the abuse of each girl would have been cross admissible under ER 404(b) as evidence of a common scheme or plan even if the counts were tried separately. Additionally, in denying Mr. Trainor's request for a new trial based on the failure to request severance, the trial court stated, "I didn't hear a matter requesting severance but had I heard it chances were extremely good I wouldn't have granted a severance should that motion have been made." Report of Proceedings (RP) (Sept. 29, 2010) at 3-4. This claim has no merit.

Mr. Trainor's fourth claim of ineffective assistance alleges that trial counsel was deficient for failing to seek suppression of his statements to the police. When pursuing an ineffective assistance argument on this basis, the defendant must establish that a motion to suppress likely would have been granted. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995). Mr. Trainor cannot meet this standard. He fails to explain why any of the statements should have been suppressed, and does not show that it is likely the trial court would have granted a motion to suppress. This claim has no merit.

Mr. Trainor's fifth argument is that trial counsel erred in failing to object to the testimony of several of the State's witnesses: A.N.S., E.M.W., expert witness Carol Harting, and rebuttal witnesses K.H. and Kimberly Henle. Each is addressed in turn.

To establish ineffective assistance of counsel based on defense counsel's failure to object to testimony, the defendant must show (1) the absence of a legitimate strategic or

9

tactical reason for not objecting, (2) that the trial court would have sustained the objection if made, and (3) the result of the trial would have differed if the evidence had not been admitted. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

Mr. Trainor first claims that trial counsel should have objected to testimony by A.N.S. and E.M.W., who both testified about incidences of abuse taking place outside the charged time frames. ER 404(b) prohibits the use of evidence of other crimes or acts to "prove the character of a person in order to show action in conformity therewith." However, evidence of a defendant's prior sexual acts against the same victim is admissible to show the defendant's lustful disposition toward that victim. *State v. Ray*, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991). Evidence of prior sexual acts may include acts occurring both before and after the charging period. *State v. Russell*, 171 Wn.2d 118, 249 P.3d 604 (2011).

To admit evidence of other acts or crimes under ER 404(b), the trial court must (1) find that the prior misconduct occurred by a preponderance of the evidence, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value of the evidence against its prejudicial effect. *State v. Pirtle*, 127 Wn.2d 628, 648-49, 904 P.2d 245 (1995).

10

The information charged Mr. Trainor with second degree rape of A.N.S. between May 30, 2009 and December 31, 2009, and second degree rape of E.M.W. between November 18, 2001 and November 17, 2003. A.N.S. testified that Mr. Trainor began touching her inappropriately in 2006, and E.M.W. testified that Mr. Trainor abused her during the charged time period, but that he also raped her in 2006 and continued to molest her on various occasions until she left town in 2008. The defense did not object to this testimony. During closing arguments, the State explained to the jury that although both girls testified to incidents outside the charging time frames, the jury could only find Mr. Trainor guilty if they found him guilty of the alleged conduct and found that the alleged conduct occurred during the charged time frame.

Generally, the decision of when or whether to object is a classic example of trial tactics, and the failure to object only constitutes deficient performance in egregious circumstances. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). However, defense counsel may be deficient for failing to object to lustful disposition testimony. *State v. Dawkins*, 71 Wn. App. 902, 863 P.2d 124 (1993).

Even if trial counsel's performance was deficient, Mr. Trainor has not shown ineffective assistance because he has not established that the trial court would have likely sustained the objection to the testimony. Both A.N.S. and E.M.W. testified in specific detail about the abuse they suffered at the hands of Mr. Trainor, during and outside the

11

charged time periods. The State introduced this evidence to show that Mr. Trainor abused both girls on multiple occasions, and it was relevant to show that Mr. Trainor felt sexual desire for both A.N.S. and E.M.W. Considering the record as a whole, including the testimony of all five girls, the prejudicial effect of the testimony did not outweigh its probative value.

Mr. Trainor also alleges that defense counsel committed error when he conceded that Ms. Harting was qualified as an expert witness and when he failed to object to her testimony regarding delayed reporting.

A witness may qualify as an expert by knowledge, skill, experience, training, or education. ER 702. The determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court. *State v. Nelson*, 152 Wn. App. 755, 765, 219 P.3d 100 (2009). Ms. Harting testified that she was a licensed mental health counselor with 23 years of experience, had a master's degree in clinical psychology, worked as director of the Sexual Assault Center for four years, and that about half of her clientele are survivors of abuse. Given her experience, education, and knowledge, Mr. Trainor has not shown that defense counsel was deficient for failing to object to Ms. Harting as a witness. There was no basis to challenge her expertise.

Trial counsel was also not deficient for failing to object to Ms. Harting's testimony regarding delayed reporting. When the credibility of the victim has been put in issue, an

expert's opinion that it is not uncommon for a sexual abuse victim to delay reporting the abuse is appropriate. *State v. Holland*, 77 Wn. App. 420, 427, 891 P.2d 49 (1995). While cross-examining A.N.S., defense counsel indirectly raised the issue of credibility by asking A.N.S. whether something happened that caused her to be angry with Mr. Trainor and report him, whether anyone helped her write her suicide letter or discussed the abuse with her before she reported it, and discussed whether she had ever lied about things in the past. The credibility of the five girls was put in issue, and it was appropriate for Ms. Harting to express her opinion that it is not uncommon for sexual abuse victims to delay reporting abuse.

Mr. Trainor next argues that trial counsel erred in failing to object to the testimony of rebuttal witnesses, K.H. and Kimberly Henle. He contends that the testimony constituted inadmissible hearsay, and that it was not properly offered as rebuttal testimony.

Hearsay is any out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Generally, hearsay is not admissible. ER 802. However, a witness's prior consistent statement may be admissible as nonhearsay if offered to rebut an express or implied charge against the declarant of recent fabrication or improper motive. ER 801(d)(1)(ii). If offered to rebut impeachment, the statements must have been made prior to the events which gave rise to the inference of fabrication. *State v.*

13

*Stark*, 48 Wn. App. 245, 249, 738 P.2d 684 (1987). A trial court's decision to admit evidence under one of the hearsay exceptions is discretionary. *State v. Strauss*, 119 Wn.2d 401, 417, 832 P.2d 78 (1992).

K.H. and Ms. Henle were properly called as rebuttal witnesses. During trial, the defense suggested that A.N.S. falsely reported the abuse because she was angry at Mr. Trainor for reprimanding her about her grades and she was upset that he was spending less time with her. After the defense rested, the State called K.H. and Ms. Henle both who testified that A.N.S. told K.H. about the abuse as early as October 2009, before A.N.S. allegedly became angry with Mr. Trainor. Since Mr. Trainor's testimony implied that A.N.S. had improper motive and fabricated the charge of abuse, the testimony was admissible under ER 801(d)(1)(ii) as a prior consistent statement. Trial counsel was not deficient for failing to object and it is not likely that the trial court would have sustained an objection.

Mr. Trainor's sixth ineffective assistance argument relates to trial counsel's failure to include Joseph Lee on the witness list. At trial, E.M.W. testified that she tried to avoid Mr. Trainor after moving out of town in 2008. Mr. Trainor wanted Mr. Lee, his half brother, to testify that in September of 2008 he had lunch with E.M.W. who told him she had been at Mr. Trainor's house and that Mr. Lee had the impression that E.M.W. had spent the previous night there. However, Mr. Lee was left off of the witness list and he

was present in the courtroom during most of the trial, including during E.M.W.'s testimony. The trial court did not allow Mr. Lee to testify.

The decision whether to call a witness is generally presumed to be a matter of trial strategy or tactics but this presumption may be overcome by showing that the witness was not presented because counsel failed to conduct appropriate investigations. *State v. Thomas*, 109 Wn.2d 222, 230, 743 P.2d 816 (1987). Failing to conduct a reasonable investigation is considered especially egregious when the uncovered evidence is exculpatory. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 721, 101 P.3d 1 (2004).

Although the failure to include Mr. Lee on the witness list may have been a deficient performance, Mr. Trainor has not shown that he was prejudiced by this error. Mr. Lee's testimony would not have directly impeached E.M.W.'s testimony that she tried to avoid Mr. Trainor after she moved away. It is not likely that Mr. Lee's testimony would have affected E.M.W.'s credibility such that the jury would have found the rest of her testimony suspect. This claim is without merit.

Mr. Trainor's final ineffective assistance argument is that trial counsel erred by failing to seek a new trial based on the newly discovered evidence that A.N.S. had undergone a sexual assault exam. Mr. Trainor acknowledges that trial counsel filed a motion for a new trial on the grounds that he provided ineffective assistance of counsel,

15

but he contends that trial counsel should have amended the motion or made an oral application for a new trial on the basis of the new evidence.

The record shows that defense counsel did not find out about the sexual assault exam until the time of sentencing, after the court had denied the motion to arrest judgment or grant a new trial. Under CrR 7.5(e), a motion for a new trial "shall be disposed of before judgment and sentence or order deferring sentence." Here, the court had already ruled on the motion and moved on to sentencing when defense counsel was alerted to the fact that a sexual assault exam may have been conducted on A.N.S. He could not amend his motion for a new trial because the court had already disposed of that motion and moved on to sentencing.

The claims of ineffective assistance of counsel are without merit.

*Prosecutorial Misconduct*

Mr. Trainor next alleges there were two instances of prosecutorial error: (1) a *Brady*[4] violation, and (2) several improper comments during closing arguments. Each is addressed in turn below.[5]

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[5] Mr. Trainor also alleges that the prosecutor committed misconduct by calling K.H. and Ms. Henle as rebuttal witnesses. As discussed already, K.H. and Ms. Henle were properly called under ER 801(d)(1)(ii), and trial counsel did not object to this testimony. This argument is without merit.

16

The appellant bears the burden of demonstrating prosecutorial misconduct on appeal. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). The appellant must establish that the conduct was both improper and prejudicial. *Id.* Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-19. Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). Moreover, the failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.*

The first argument involves the sexual assault exam that A.N.S. underwent in February 2010. Mr. Trainor claims that the prosecutor committed a *Brady* violation and violated CrR 4.7 when she failed to notify Mr. Trainor of the sexual assault exam or to provide him a copy of the exam results.

A *Brady* violation occurs when: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence is material in the sense that if it had been disclosed to the defense, there is a reasonable probability that the result of the proceeding would have been different. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

17

Mr. Trainor has failed to establish a *Brady* violation because the evidence is not exculpatory or impeaching, and there is not a reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense. Mr. Trainor has also failed to establish a CrR 4.7(a) violation. Although the prosecutor is obligated to disclose the results of any physical exams within her possession or control, the record shows that the prosecutor had no knowledge of the exam until the sentencing hearing. Since the prosecutor was not in control or possession of the exam results, there was no CrR 4.7(a) violation.

Mr. Trainor also claims that the prosecutor made several improper comments during closing argument. We address each of the challenged comments in turn.

During closing arguments, alleged misconduct is considered in the context of the total argument, the evidence addressed therein, jury instructions, and the issues of the case. *State v. Turner*, 167 Wn. App. 871, 882, 275 P.3d 356 (2012). A prosecutor is allowed to draw and express reasonable inferences from the evidence produced at trial. *State v. Hale*, 26 Wn. App. 211, 216, 611 P.2d 1370 (1980).

Mr. Trainor first takes exception to the prosecutor's comment asking the men on the jury to think about the impropriety of grown men hanging out with teenage girls. The prosecutor stated: "Now, I want you all to think about something. Especially, you men. When was the last time you actively made a decision to hang out with a fourteen-year-old

18

girl?" RP at 605. After defense counsel objected, the prosecutor continued with, "He is a forty-six year old single man. It makes zero sense. But it makes complete sense when you look at the evidence of this case. He was grooming her." RP at 606-07. The trial court issued a curative instruction telling the jury to disregard any argument asking them to place themselves in the position of the defendant.

The prosecutor made this comment in the context of arguing that Mr. Trainor groomed the victims. Several of the girls testified that Mr. Trainor spent time with them doing things like watching movies and taking trips, and that the inappropriate touching began with him asking them to give him back rubs or rubbing their stomachs. Ms. Harting testified that this type of touching was typical touching associated with the concept of grooming. The prosecutor argued the grooming concept by stating that Mr. Trainor spent all this time with the girls in order to groom them and that there was no other explanation for why he would choose to spend so much time with young female relatives. Given the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the curative instruction given by the court, Mr. Trainor has not established that the prosecutor erred, let alone that this comment deprived him of a fair trial.

19

Mr. Trainor also alleges that the prosecutor inappropriately offered her own opinions about how an innocent person would react to the allegations and asked the jury to think about its emotions as opposed to how Mr. Trainor reacted.[6]

During closing argument, the prosecutor showed the jury part of the taped police interview of Mr. Trainor. The prosecutor first asked the jury how it thought it would react during the interview if it was informed it was brought in for allegations of rape of a child. Defense counsel objected and a side bar followed, where defense counsel requested a mistrial. He also accused the prosecutor of making facial gestures for the jury. The trial court advised the prosecutor to make it less personal and tone down the dramatics. The prosecutor went on to show part of the interview, prefacing it by saying, "When you watch this interview, generally, think about how one would act when they have been advised about allegations of Rape of a Child. How would one act? Would they talk about where they went to high school? Would they talk about what name their dog is? . . . Or would they say, why the heck am I here? Who is making these allegations against me? I haven't raped anybody." RP at 612.

---

[6] Mr. Trainor also claims that during the side bar to discuss this improper comment, the prosecutor made inappropriate facial gestures for the jury. However, the only evidence of this is defense counsel's statement that "she is making sure that the jury sees her looking a certain way," and the trial court's admonition to the prosecutor to "tone it down a little bit, the dramatics." RP at 610-11. Mr. Trainor has not satisfied his burden of showing the impropriety of the prosecutor's facial gestures or their prejudicial effect.

A jury may consider whether conduct on the part of an accused person is not likely to be the conduct of a person who was conscious of his innocence or tends to show an indirect admission of guilt. *State v. McGhee*, 57 Wn. App. 457, 461, 788 P.2d 603 (1990). It is improper for a prosecutor to express a personal opinion about the credibility of a witness during closing argument. *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). Testimony regarding a defendant's statements and demeanor is not opinion and therefore is admissible if relevant. *State v. Day*, 51 Wn. App. 544, 552, 754 P.2d 1021 (1988).

At trial, the State played Mr. Trainor's entire police interview for the jury. The prosecutor could properly ask the jury to consider whether Mr. Trainor's conduct was the conduct of a person who was conscious of his innocence. The trial court issued a curative instruction for the jury to ignore any argument made by the prosecutor that asked jury members to place themselves in the position of Mr. Trainor. Given the evidence addressed in this argument and the court's curative instruction, Mr. Trainor has not established that this comment constituted prosecutorial misconduct.

Mr. Trainor's final argument regarding the prosecutor's closing remarks is that the prosecutor distorted the testimony given by Mr. Trainor and suggested to the jury that in order to acquit Mr. Trainor, it had to believe that the girls were lying. A prosecutor engages in misconduct by arguing that the jury must conclude that the State's witnesses

21

are either lying or mistaken to return a not guilty verdict. *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996). The record shows that the prosecutor told the jury that the girls had no motive to lie but that Mr. Trainor had every motive not to be honest. However, the prosecutor never told the jury it had to find the girls were lying in order to acquit Mr. Trainor.

The claims of prosecutorial misconduct are without merit.

*Evidentiary Rulings*

Mr. Trainor contends that the trial court committed error in four of its evidentiary rulings. Evidentiary rulings are reviewed for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

Mr. Trainor first takes issue with the trial court for restricting the number of photographs the defense could offer into evidence during the cross-examination of E.M.W. She testified that after leaving town in 2008 she tried to avoid all contact with Mr. Trainor. On cross-examination, the defense sought to prove that E.M.W. actually stayed in contact with Mr. Trainor, e-mailing him and sending him photographs. Defense counsel marked a dozen photographs it planned to admit that E.M.W. had allegedly sent to Mr. Trainor. The prosecutor objected to the relevance of the photographs and the court ordered defense counsel to limit the number of photographs because they were

22

duplicative. Six photos were submitted to the jury, and defense counsel was allowed to cross-examine E.M.W. using all of the photographs.[7]

ER 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here, all of the pictures were being admitted to prove the same thing and several of them were duplicative. The trial court's decision to admit only some of the pictures was a proper evidentiary ruling pursuant to ER 403. There was no abuse of discretion.

Mr. Trainor also contends that the trial court erred with respect to several rulings relating to the defense witnesses. His initial claim is that the trial court erred in restricting the number of character witnesses Mr. Trainor could call.

A defendant may introduce evidence of his character if it is pertinent to the crime charged. *State v. Kelly*, 102 Wn.2d 188, 193-95, 685 P.2d 564 (1984). Sexual morality is considered a pertinent character trait in sexual offense cases. *State v. Woods*, 117 Wn. App. 278, 280, 70 P.3d 976 (2003). Proof of sexual morality may be made through

---

[7] Counsel did not designate any of the photographs for the purpose of this appeal and therefore those exhibits are not part of the record before this court. RAP 9.1(a); *State v. Jackson*, 36 Wn. App. 510, 516, 676 P.2d 517 (1984). However, the substance of the photographs is apparent from the record. The photographs were all pictures of E.M.W. which were purportedly sent to Mr. Trainor by E.M.W. herself.

testimony of a character witness who is knowledgeable about the defendant's reputation in the community for sexual morality. *State v. Callahan*, 87 Wn. App. 925, 934, 943 P.2d 676 (1997). A party seeking to admit reputation testimony must lay a foundation establishing that the witness is familiar with the person's reputation and that his or her testimony is based on the community's perception of that person in regards to the pertinent character trait. *Id.* at 935. The witness's personal opinion is not competent testimony. *Kelly*, 102 Wn.2d at 195. The trial court's decision regarding the adequacy of the foundation necessary to admit reputation evidence is reviewed for an abuse of discretion. *Id.*

Mr. Trainor sought to admit the testimony of six character witnesses. The court ruled that there was insufficient foundation for three of the witnesses to testify regarding Mr. Trainor's reputation for sexual morality. The trial court did not abuse its discretion in concluding that there was an insufficient foundation for these three witnesses. Two of them lived in Richland and only occasionally had contacts with people from Benton City; Mr. Trainor failed to show why either of them would be familiar with his reputation for sexual morality in Benton City. The trial court also correctly excluded the other character witness because she was not familiar with Mr. Trainor's reputation for sexual morality in the community.

Mr. Trainor also claims that the trial court erred because it restricted the number of defense witnesses, improperly preventing him from calling 16 witnesses. However, the record shows that defense counsel voluntarily chose to call only eight witnesses, and that the trial court did not restrict the number of defense witnesses. This claim has no merit.

Additionally, Mr. Trainor contends that the trial judge erred in excluding Mr. Lee as a defense witness. The decision to allow an unlisted witness to testify lies within the sound discretion of the trial court and will not be overturned except for a manifest abuse of discretion. *State v. Funches*, 5 Wn. App. 491, 494, 487 P.2d 793 (1971). Here, where Mr. Lee was not included on the witness list, he was in the courtroom during all of E.M.W.'s testimony, and his testimony did not directly impeach E.M.W., the trial court did not abuse its discretion in denying the request to let Mr. Lee testify.

The trial court properly limited the photographic evidence and defense witnesses.

*Motion for New Trial*

Mr. Trainor attacks the trial court's denial of his posttrial motion to set aside the verdict and grant a new trial. The trial court correctly denied the request. There was sufficient evidence to support the verdict and therefore Mr. Trainor did not demonstrate a ground for arrest of judgment under CrR 7.4. He also did not establish any grounds for a new trial. The trial court did not abuse its discretion.

*Statement of Additional Grounds*

Mr. Trainor also filed a Statement of Additional Grounds (SAG) in which he argues five grounds for reversal. The majority of the issues Mr. Trainor raises are issues that were adequately addressed by counsel and therefore not reviewed again. *See* RAP 10.10(a). Mr. Trainor also contends that part of D.L.S.'s testimony should have been stricken from the record and that Detective Clarke knowingly committed perjury and his false testimony prejudiced Mr. Trainor. We will briefly address each of these claims.

Under ER 611(c), leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony. Mr. Trainor contends that the prosecutor used leading questions and harassed D.L.S. until she said what she was supposed to say in response to the question of how Mr. Trainor had touched her. However, a review of the record shows that D.L.S., who was 11 years old at the time of trial, did not understand what the prosecutor was asking and the prosecutor rephrased the same question several times in an attempt to answer the question of whether Mr. Trainor digitally penetrated D.L.S., which was a necessary element the State had to prove. Mr. Trainor has failed to show prosecutorial error, ineffective assistance, or trial court error based on this line of questioning.

Mr. Trainor also claims that Detective Clarke falsely testified that E.M.W. and the other alleged victims never had an opportunity to discuss the case among themselves, and

that as soon as E.M.W. contacted him, she drove directly to his office from her home in Spokane. However, contrary to those assertions, Detective Clarke never testified as to whether the victims had a chance to discuss the case prior to talking to him, nor did he testify that E.M.W. came straight to his office from Spokane. He testified that Ms. Sanders told him that E.M.W. was en route to the Tri-Cities and wanted to talk to him, and that E.M.W. showed up at his office at 4:00 that afternoon. Mr. Trainor has not established that Detective Clarke committed perjury or that the testimony prejudiced him.

The arguments presented in the SAG are without merit.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, J.

27