[No. 22091–8–I.   Division One.   April 2, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES McGHEE, *Appellant.*

*Dennis Benjamin* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ricardo Martinez, Deputy,* for respondent.

FORREST, J.—Charles McGhee appeals from his conviction for robbery in the first degree, attempted robbery in the first degree and felony murder in the first degree, claiming the trial court erred in admitting evidence of his threat against a witness, in failing to give the "missing witness" instruction and asserting he received ineffective assistance of counsel. We affirm.

The charges against appellant arose from two incidents. On the night of February 1, 1987, Mark Stevens and Joel Wee were at Stevens' home when they heard a knock at the door. After Stevens answered the door, Jeanette Miller and Michael Wicks forced their way into the home. They forced Wee and Stevens to lie on the floor at gunpoint. Wicks assaulted Stevens with a sawed–off shotgun and threatened

to shoot him. Miller searched through Wee's pockets, taking approximately $5. Wicks and Miller then fled. Later that evening, Judy Williams, who was at home with her daughter, Sidney, and husband, Doug, answered a knock at her door. Miller and Wicks forced their way into the home after the door was opened. They demanded drugs and money. Wicks shot Doug Williams in the stomach as Doug explained they had no drugs or money. Doug was killed. Wicks then shot Judy in the back of the head and neck, also injuring Sidney. Both survived. Wicks and Miller again fled and were later apprehended.

Miller gave a statement on February 10, 1987, indicating that "Charlie" had directed and driven them to the houses. Although the victims knew neither Wicks nor Miller, they did know Charles McGhee. McGhee was charged and convicted of robbery in the first degree, attempted robbery in the first degree and felony murder in the first degree.

Mark Stevens, one of the victims, was arrested on a material witness warrant and taken to the King County Jail. While there, he saw the appellant behind a glass barrier in the exercise room. McGhee accused Stevens of "signing a statement" against him and called him a "snitch". McGhee then drew his hand across his throat in a slashing motion, apparently threatening Stevens. Defense counsel's pretrial motion to exclude this evidence was denied.

McGhee made a pretrial motion to appoint substitute counsel. The motion was denied. Substitute counsel was appointed prior to argument on the motion for a new trial and sentencing. After an extensive hearing upon motion for a new trial, including testimony from McGhee's former defense counselors, his motion was denied and he was sentenced.

### TESTIMONY AS TO JAIL INCIDENT

McGhee urges that the court erred in failing to analyze the admissibility of testimony about the jail incident on the

record as required under ER 404(b).[1] There was consider-
able discussion by the trial court as to the admissibility of
the evidence. However, the trial court did not think that
ER 404(b) applied and, hence, did not explicitly conduct
the analysis required by this rule. Therefore, the controlling
question becomes whether the record permits an adequate
review of the ruling.

When the trial court fails to conduct the on–the–
record balancing process required by ER 404(b), a review-
ing court should decide issues of admissibility if it appears
possible after reviewing the record as a whole.[2] As the
court aptly stated in *State v. Gogolin*, 45 Wn. App. 640,
645, 727 P.2d 683 (1986):

> [W]hat purpose is served by reversing a conviction where the
> questioned evidence is relevant and admissible? The trial
> court's failure to articulate its balancing process on the record
> does not make admissible evidence inadmissible.

The precondition to the admission of evidence of
other bad acts pursuant to ER 404(b), like all evidence, is
relevancy. No Washington case deals directly with the rele-
vancy under ER 404(b) of a defendant's threats against a
witness. Evidence of threats has been held relevant in a
large number of federal cases since it frequently connects

---

[1] **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or
acts is not admissible to prove the character of a person in order to show that
he acted in conformity therewith. It may, however, be admissible for other
purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident.
*See State v. Saltarelli*, 98 Wn.2d 358, 655 P.2d 697 (1982); *State v. Bowen*, 48
Wn. App. 187, 738 P.2d 316 (1987). The comment to ER 404(b) states in part:

> The court must determine whether the danger of undue prejudice outweighs
> the probative value of the evidence, in view of the availability of other means
> of proof and other factors. . . .
>
> The fact that section (b) uses the discretionary word "may" does not confer
> arbitrary discretion on the trial judge. Whether evidence is admissible under
> this section is determined by reference to the considerations set forth in rule
> 403.

[2] *State v. Bowen, supra* at 191; *State v. Gogolin*, 45 Wn. App. 640, 645, 727
P.2d 683 (1986); *State v. Mahmood*, 45 Wn. App. 200, 724 P.2d 1021, *review
denied*, 107 Wn.2d 1002 (1986).

the defendant to the crime and shows guilty knowledge.[3] These cases focus on whether the probative value of the evidence is substantially outweighed by its prejudicial effect, rather than on relevancy, which is assumed.

In *State v. Kosanke*,[4] a prerule case, the defendant and his wife attempted to persuade the parents of the victim to move to Idaho to prevent her from testifying. The court wrote:

> The evidence was relevant and material. Conduct on the part of an accused person, or that of someone acting in his behalf at his request or with his knowledge and consent, having for its purpose the prevention of witnesses appearing and testifying at his trial, is a circumstance for the jury to consider as not being likely to be the conduct of one who was conscious of his innocence, or that his cause lacks truth and honesty, or as tending to show an indirect admission of guilt; . . .

*Kosanke,* at 215. McGhee's threat has relevance since it reveals a consciousness of guilt and ties the defendant to the victim. Hence, we analyze its probative value and prejudicial effect.

The principal issue for the jury was whether McGhee planned the two robberies. The State's case depended on the testimony of Jeanette Miller whose credibility was severely challenged on cross examination. Corroboration of her testimony was crucial. McGhee argues that admitting the testimony as to his threat against Stevens prejudicially suggested he was a violent person, and was therefore likely

---

[3]*See United States v. Check,* 582 F.2d 668 (2d Cir. 1978) (severe prejudice can result from the use of death threat testimony and its use should be limited to situations where there is a clear need for such evidence); *United States v. Panebianco,* 543 F.2d 447 (2d Cir. 1976), *cert. denied,* 429 U.S. 1103 (1977) (prosecution's elicitation of death threat testimony on redirect was proper after defense counsel broached the topic during cross examination); *United States v. Weir,* 575 F.2d 668 (8th Cir. 1978) (prejudice resulting from testimony as to death threats made by defendant substantially outweighed probative value, so conviction reversed); *United States v. Cirillo,* 468 F.2d 1233 (2d Cir. 1972), *cert. denied,* 410 U.S. 989 (1973); *United States v. Dorman,* 752 F.2d 595 (11th Cir.), *cert. denied,* 474 U.S. 834 (1985).

[4]23 Wn.2d 211, 160 P.2d 541 (1945).

to have committed the crimes charged. However, his conduct—calling Stevens a snitch and making a threatening gesture—does not suggest he was acting in conformity with a violent disposition. Nor was he charged with personally committing the violence, but with planning the robberies. McGhee correctly contends that his behavior could have been that of a wrongfully accused person. More plausibly it was the conduct of one with guilty knowledge attempting to intimidate a witness. The inference was for the trier of fact. The probative value outweighs the possibility of unfair prejudice. The evidence was properly admitted for the jury's consideration in determining whether the defendant was guilty of the crimes charged.

■ McGhee also assigns error to the court's failure to give a limiting instruction as to the purpose of this evidence. None was requested. Failure to give such an instruction, even if it would have been proper, was not manifest constitutional error and may not be raised for the first time on appeal.[5]

## Missing Witness Instruction

■ McGhee assigns error to the court's failure to give WPIC 5.20,[6] the "missing witness" instruction. A party's failure to produce a particular witness who would ordinarily and naturally testify raises the inference in certain circumstances that the witness's testimony would have been

---

[5]*State v. Ellard*, 46 Wn. App. 242, 730 P.2d 109 (1986), *review denied*, 108 Wn.2d 1011 (1987); RAP 2.5(a).

[6]"If the plaintiff does not produce the testimony of a witness who is [within the control of] [or] [peculiarly available to] the plaintiff and as a matter of reasonable probability it appears naturally in the interest of the plaintiff to produce the witness, and if the plaintiff fails to satisfactorily explain why it has not called the witness, you may infer that the testimony which the witness would have given would have been unfavorable to the plaintiff, if you believe such inference is warranted under all the circumstances of the case."

unfavorable. To invoke the "missing witness" rule and obtain an instruction in a criminal case, the defendant is not required to prove that the prosecution deliberately suppressed unfavorable evidence.[7] Instead, the defendant:

> must establish such circumstances which would indicate, as a matter of reasonable probability, that the prosecution would not knowingly fail to call the witness in question unless the witness's testimony would be damaging. In other words, "the inference is based, not on the bare fact that a particular person is not produced as a witness, but on his non–production *when it would be natural for him to produce the witness if the facts known by him had been favorable.*"

*Davis,* at 280 (quoting 2 J. Wigmore, *Evidence* § 286 (3d ed. 1940)).

Further, the "missing witness" instruction is appropriate only when the uncalled witness is "peculiarly available" to one of the parties. As the *Davis* court explained:

> For a witness to be "available" to one party to an action, there must have been such a community of interest between the party and the witness, or the party must have so superior an opportunity for knowledge of a witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that his testimony would have been damaging.

*Davis,* at 277 (holding that an uncalled undersheriff, who was an eyewitness to the interrogation in question and worked closely with the county prosecutor's office, was peculiarly available to the prosecution).[8]

To argue that the State and a witness have a community of interest because the State has accepted such witness's

---

[7]*State v. Davis,* 73 Wn.2d 271, 279–80, 438 P.2d 185 (1968); 5 K. Tegland, Wash. Prac., *Evidence* § 85, at 247 (3d ed. 1989).

[8]*See also State v. Clinton,* 25 Wn. App. 400, 404, 606 P.2d 1240 (1980). In its brief, the State asserts that it had a plea agreement with Wicks not to call him as a witness against McGhee. No evidence of such an agreement exists in the record. At oral argument, counsel claimed the agreement was expressed orally at the time the plea was taken. No transcript substantiating this claim has been supplied to his court. Accordingly, the argument is improper and will be disregarded.

plea and imprisons him is close to frivolous. Indeed, such a witness is likely to show bias in favor of another defendant. Defense counsel had interviewed Wicks and could have called him. We recognize that the ability to call the witness, considering the defendant has no duty to produce evidence, does not necessarily deny the right to the instruction.[9] It is troubling, however, that a defendant may seek the benefit of the "missing witness" inference, yet reject the actual testimony he has the ability to produce. When both the defendant and the State have connections with the witness, the trial court is entitled to consider defendant's failure to compel the witness's testimony in determining whether the "missing witness" instruction should be given. We find no error in the rejection of WPIC 5.20.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ In his pro se brief, McGhee asserts ineffective assistance of counsel. The trial court commendably conducted a thorough posttrial hearing, when the trial was still fresh to the judge and counsel, exploring this claim. McGhee's trial counselors were examined by new counsel appointed on his behalf. The court's key findings of fact[10] support conclusion of law 1:

> Having found no deficiency in counsel's representation of the defendant at trial the Court denies the motion for a new trial.

The court's findings are unchallenged by any citation to the record and accordingly are accepted as verities on appeal.

---

[9]*Davis*, at 276.

[10]Finding of fact 3 reads: "Having presided over the trial and after listening to extensive testimony on this issue the Court cannot find any error or deficiency in the preparation or presentation of this case by defense counsel."

Finding of fact 4 reads: "To the contrary, this Court finds that trial counsel diligently explored all avenues in their preparations including interviewing potential defense witnesses."

Finding of fact 12 reads: "The Court is troubled by the defendant's effort to now put his attorneys on trial after the jury reached a verdict against him."

The claim of ineffective assistance of counsel is without merit.

Affirmed.

COLEMAN, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied April 30, 1990.

Review denied at 115 Wn.2d 1013 (1990).