FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 SEP 15 AM 10: 35



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69206-2-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | |
| MAURICE LEON JORDAN, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: September 15, 2014 |

BECKER, J. — Facing robbery and assault charges for beating up and taking cash from a friend at a backyard barbeque, appellant Maurice Jordan wrote three letters to his father, who witnessed the robbery. The letters bitterly and profanely attacked his father for cooperating with the police. We conclude the letters were properly admitted as evidence of the appellant's consciousness of guilt.

The robbery occurred at Jordan's father's home on April 30, 2011. Jordan and his friend Earl Howard were barbequing outside when they got into a heated argument. Jordan's father heard yelling, came out, and asked them to stop arguing or leave. He offered Howard cash to reimburse him for the food he brought. When Howard accepted the cash, Jordan became angry and struck Howard. The two wrestled until Jordan was able to remove the cash from Howard's right front pocket. Thereafter, Jordan fled.

According to testimony at trial, Jordan kept fighting even after his father told him he was going to call the police. Because the assault continued and left Howard with blood running down his face, Jordan's father called 911. After being transported to Harborview Medical Center by ambulance, Howard received four stitches as treatment for the lacerations sustained during his assault.

At Harborview, Howard said he had been assaulted by a friend over money. Hospital personnel called the police. An officer responded, and Howard made the same statement to the officer. Jordan was subsequently arrested. The State charged him with second degree robbery and fourth degree assault for the fight. The State also charged him with intimidating a witness based on communications he later had with Howard.

Prior to trial, Seattle Police Department Detective Dave Clement contacted Jordan's father to speak with him about the assault. During that interview, Jordan's father said that Jordan assaulted and robbed Howard. He also confirmed Howard's recitation of events regarding the assault. While in custody, Jordan received a copy of the statement his father made to law enforcement and sent his father three letters. Two of the letters expressed Jordan's anger towards his father for assisting the State in its prosecution. In one of the letters, Jordan characterized the statements his father gave to police as "a fucking lie." Jordan also claimed that his father did not "know shit about what happened" and was therefore a "lying piece of shit" and a "lying son of a bitch."

The State obtained the letters and offered them at trial. Jordan objected on the basis that the letters were irrelevant and unduly prejudicial, and he

2

claimed they did not establish a consciousness of guilt. When ruling on Jordan's objection, the court noted that "a jury might look at" the letters "and say this is a letter written by somebody who knew he was guilty, which they're permitted to do." Based on that interpretation of the letters Jordan wrote to his father and our opinion in State v. Moran, 119 Wn. App. 197, 217-18, 81 P.3d 122 (2003), review denied, 151 Wn.2d 1032 (2004), the trial court concluded that the letters were admissible under ER 404(b).

The State introduced Jordan's letters through his father. When discussing the content of the letters on direct examination, Jordan's father recognized that "they were insulting type things, things you wouldn't say to your father" and confirmed that the letters related to his cooperation with the police. At the behest of the State, Jordan's father read each of the letters aloud to the jury.

Jordan, who was representing himself pro se, cross-examined his father extensively about the letters at issue. The following colloquy is illustrative:

> Q. Do you remember [the prosecutor] asking you what the letters meant to you, and you saying, replying, "they didn't mean anything"?
> A. They really didn't. If you asked me that, no, they didn't mean anything, because they didn't even make any sense.
> Q. So you didn't understand any meaning behind the letters at all? What was it was? I was just babbling?
> A. You were just babbling because you already know what the truth was. You know the incidents happened. So what you was doing is challenge me to change my story. It was no changing the story. Remember, I'm the one who did all the calling 911.
> . . . .
> Q. . . . So, when you read that in the letter that I said that I wanted you to come and tell the truth, did you believe that I was trying to alter your testimony by telling you to come and tell the truth, yes or no?
> A. Yes.
> . . . .

3

Q. So I guess telling you nothing would have been better, right?
A. That would have been appropriate.

Jordan presented lengthy testimony on direct examination of himself, but he did not address or make reference to the letters.

In closing argument, the State characterized the letters as "tragic" and argued that they helped to establish Jordan's guilt. Most of the State's closing argument was predicated upon other evidence such as the testimony of firemen, police officers, hospital workers, and Howard. Jordan's closing argument described the letters as a product of a tumultuous relationship between father and son.

The jury acquitted Jordan on the charge of intimidating a witness but convicted him on the second degree robbery and fourth degree assault charges. The court ruled at sentencing that the robbery merged with the assault.

On appeal, Jordan claims the letters were irrelevant because they only establish he and his father shared a dysfunctional relationship. He argues that they were unduly inflammatory because they were laced with profanity and displayed his antagonism toward his father. He contends they were not indicative of a guilty conscience and therefore had no bearing on whether or not he committed robbery.

This court reviews evidentiary rulings for an abuse of discretion. State v. Finch, 137 Wn.2d 792, 810, 975 P.2d 967, cert. denied, 528 U.S. 922 (1999). A court is said to have abused its discretion when it misapplies the law or predicates its decision on incorrect legal principles. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Evidence of other crimes or bad acts is not admissible to prove a person's character, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident. ER 404(b). Under ER 404(b), evidence regarding attempts to influence or prevent testimony is admissible because it tends to show consciousness of guilt. See Moran, 119 Wn. App. at 217-18; State v. McGhee, 57 Wn. App. 457, 459-61, 788 P.2d 603, review denied, 115 Wn.2d 1013 (1990). To admit such evidence under ER 404(b), the trial court must (1) find by a preponderance of the evidence that the uncharged acts occurred, (2) identify the purpose for admission, (3) determine that the evidence is materially relevant to that purpose, and (4) balance the probative value of the evidence against any unfair prejudicial effect. State v. Kilgore, 147 Wn.2d 288, 292, 53 P.3d 974 (2002).

The trial court admitted the letters for the purpose of proving Jordan's consciousness of guilt. Jordan contends they do not show consciousness of guilt because he did not threaten his father, did not urge him to commit perjury, and did not directly ask him not to testify. He characterizes the letters as intended to encourage his father "to show up and tell the truth."

A request communicated by a defendant that a witness change his testimony or opinion about the defendant's guilt may reveal a defendant's consciousness of guilt, even if not phrased in threatening terms. Although not a threat, Jordan's letter to his father can be reasonably interpreted as requesting him to change his mind about Jordan's guilt. Moran, 119 Wn. App. at 219; see

also <u>McGhee</u>, 57 Wn. App. at 462. The content of Jordan's letters supports a substantial inference that Jordan wanted to persuade his father to change his mind about Jordan's guilt. The letters harshly criticized Jordan's father for cooperating with the police in the investigation of the robbery and suggested in no uncertain terms that his father was giving the police an inaccurate version of the incident. Jordan's father confirmed that he believed Jordan was trying to alter his testimony. The probative value of evidence establishing a consciousness of guilt is rarely, if ever, outweighed by unfair prejudice. <u>McGhee</u>, 57 Wn. App. at 462.

We conclude the trial court did not abuse its discretion by admitting the letters.

Affirmed.

_Becker, J._

WE CONCUR:

_Jau, J._                    _Dwyer, J._