[No. 13229-3-III.   Division Three.   December 1, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE THOMAS CHAVEZ, *Appellant*.

*Hugh M. Spall, Jr.*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Duane R. Knittle, Deputy*, for respondent.

THOMPSON, C.J. — Jose Thomas Chavez appeals his conviction for delivery of heroin. He contends the court erred when it refused to dismiss the conviction on the ground it was affected by false testimony and because the State withheld material evidence relevant to the credibility of key witnesses. We affirm.

Mr. Chavez was charged with and convicted of delivery of heroin and possession of heroin with intent to deliver. The charges were based upon a drug buy executed by the drug task force, as follows:

On September 30, 1992, Detective Gary Kouba of the Yakima County Sheriffs Department arranged with Howard Mayfield, a confidential informant, to make a controlled buy. Mr. Mayfield earlier had agreed to cooperate with law enforcement after a search of his residence revealed he was manufacturing marijuana. Before the buy, Detective Kouba performed a patdown of Mr. Mayfield to verify he had no drugs on his person, and recorded the serial number of a $20 bill he gave him to make a purchase.

Detective Kouba first sent Mr. Mayfield to the area of the Blue Banjo tavern. He observed Mr. Mayfield as he walked through the tavern's rear parking lot and proceeded to where Detective Kouba was waiting in his unmarked car. Detective

Kouba then told Mr. Mayfield to go to the Union Gospel Mission, approximately one-half block to the south. There, Mr. Mayfield approached four men standing around a blue Datsun.

Officers Thomas Foley and Jim Levno of the Yakima Police Department assisted in the controlled buy. They testified they saw Mr. Mayfield and a man, later identified as Mr. Chavez, meet at the front of the Datsun. Both officers observed the two men's hands "come together". At that point, Mr. Mayfield gave the prearranged signal the buy was completed, and walked away.

Officers Foley and Levno approached the group immediately after Mr. Mayfield left. Officer Levno detained Mr. Chavez while Officer Foley detained another of the men. Detective Kouba made contact with Mr. Mayfield and radioed them Mr. Mayfield's description of the person from whom he made the purchase. The description matched Mr. Chavez — a Hispanic male, approximately 35 years old, $5^1/2$ feet tall, with black hair and a mustache, and wearing black or greyish type stone-washed jeans, a grey western style shirt and a silver horseshoe-shaped belt buckle. Detective Kouba also advised the officers that Mr. Mayfield said heroin was buried at a fencepost at the rear of the Datsun. Officer Foley found a brown paper containing a black tar-like substance at the location Mr. Mayfield described. Officer Levno arrested Mr. Chavez, searched him, and seized a $20 bill which Officer Kouba later examined and identified as the bill he gave Mr. Mayfield.

On cross examination of Officers Foley and Levno, defense counsel brought out that neither of them was able to corroborate certain details testified to by Mr. Mayfield. Specifically, Mr. Mayfield said that after he asked for drugs, Mr. Chavez went to a fencepost at the rear of the Datsun, dug around it, and pulled a brown piece of paper out of the ground. When he returned to Mr. Mayfield, he opened the paper, and tore off a chunk of a black "gooey" substance that looked like tar. Mr. Chavez handed it to him and took the $20 bill. Officers Foley and Levno stated they did not see Mr.

Chavez bend down while they were surveilling the transaction.

Detective Kouba testified he and Mr. Mayfield went to the police station after the buy. Another law enforcement officer took a Polaroid-type picture of Mr. Chavez. The picture was still in the process of developing when Detective Kouba showed it to Mr. Mayfield. Mr. Mayfield was not sure the picture depicted the person he dealt with, so Detective Kouba took him to Mr. Chavez' cell. Upon viewing Mr. Chavez, Mr. Mayfield identified him as the seller of the heroin.

At trial, the defense focused on the fact Officers Levno and Foley could not fully corroborate Mr. Mayfield's testimony. In addition, the defense attempted to raise a question about Mr. Mayfield's credibility by eliciting from him the fact he agreed to work as an informant to secure favorable treatment in his own criminal case.

After the jury returned its verdict of guilty on both counts, defense counsel had occasion to speak with Mr. Mayfield's attorney, Adam Moore. Mr. Moore told him Mr. Mayfield's agreement to work with law enforcement was in writing. This caused defense counsel to ask the prosecutor for a copy of the cooperation agreement. When he reviewed it, he learned for the first time that the State had promised not to charge Mr. Mayfield with a 24-month sentence enhancement for manufacturing marijuana within 1,000 feet of a school. Further investigation revealed Mr. Mayfield had not yet pleaded guilty to manufacturing marijuana. Indeed, the State had not formally charged Mr. Mayfield with that offense at the time Mr. Chavez was tried.

Counsel for Mr. Chavez also discovered a letter written by Mr. Mayfield's attorney to the prosecutor handling the charge against Mr. Mayfield. The letter stated: "You . . . prefer not to change your position regarding the charging at this time, and your offices will await *his ultimate performance* of the agreement before any charging reduction." (Italics ours.) In addition to the cooperation agreement and the just described letter, the defense obtained a third document — a copy of the police report listing the items seized in the search of Mr.

Mayfield's residence. In the defense's view, the drug para-
phernalia listed there was indicative of a grower manufac-
turing marijuana for sale. During the Chavez trial, the
State had portrayed Mr. Mayfield as a person who grew
marijuana only for his own use.

Mr. Chavez moved for dismissal of the convictions or, in
the alternative, a new trial. He argued the State's failure to
disclose the above documents prevented him from fully
exploring the circumstances of Mr. Mayfield's drug involve-
ment and reasons for providing favorable testimony for the
State in the Chavez trial. The trial court rejected Mr.
Chavez' argument as to the delivery conviction. However,
the court was persuaded the State's failure to disclose af-
fected Mr. Chavez' conviction for possession of heroin with
intent to deliver. Mr. Mayfield's credibility was critical to
the latter charge because the surveilling officers did not cor-
roborate his testimony that Mr. Chavez had gone to the fen-
cepost to retrieve the heroin. The court therefore dismissed
Mr. Chavez' conviction for possession, but denied his motion
to dismiss the delivery conviction.

On appeal, Mr. Chavez assigns error to the court's rul-
ing on the motion to dismiss the delivery charge. Our review
is guided by *United States v. Bagley*, 473 U.S. 667, 682, 87 L.
Ed. 2d 481, 105 S. Ct. 3375, 3383 (1985). There, the Supreme
Court adopted a single test for determining whether undis-
closed evidence which is favorable to the defendant is mate-
rial and therefore requires reversal of the defendant's con-
viction:

> The evidence is material only if there is a reasonable probabil-
> ity that, had the evidence been disclosed to the defense, the
> result of the proceeding would have been different. A "reason-
> able probability" is a probability sufficient to undermine confi-
> dence in the outcome.

*Bagley*, 473 U.S. at 682. The Court held the foregoing test
applied in all cases of nondisclosure, *i.e.*, (1) cases in which
the prosecutor knowingly failed to disclose that testimony
used to convict the defendant was false, (2) cases in which
the defendant made no specific request for the evidence, or
(3) cases in which the defendant made a specific request.

*Bagley*, 473 U.S. at 678-82. Previously, the Court had used slightly different formulations of the materiality test, depending on the circumstances in which it was raised. 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.5, at 181 (Supp. 1991).[1] The Washington Supreme Court has adopted the test set forth in *Bagley*. *State v. Knutson*, 121 Wn.2d 766, 772, 854 P.2d 617 (1993); *State v. Benn*, 120 Wn.2d 631, 650, 845 P.2d 289, *cert. denied*, 114 S. Ct. 382 (1993).

We agree with Mr. Chavez that the State had a duty to disclose the agreement, the letter, and the police report, because they contained evidence relevant to the issue of Mr. Mayfield's credibility. The State also misled the jury when the prosecutor said in closing that Mr. Mayfield had pleaded guilty to manufacturing marijuana.[2] However, no reasonable probability exists that the verdict would have been different had the documents and Mr. Mayfield's charging status been disclosed.

The State's case against Mr. Chavez was not founded solely on Mr. Mayfield's testimony. Mr. Mayfield's testimony was corroborated by Officers Levno and Foley, who saw Mr. Mayfield and Mr. Chavez touch hands. It was also corroborated by Detective Kouba, who identified the $20 bill seized from Mr. Chavez as the one he gave Mr. Mayfield to purchase drugs. Mr. Chavez argues he could have challenged Detective Kouba's credibility if he had known at trial Mr. Mayfield's true charging status and the specifics of the items seized from Mr. Mayfield's home. We are not persuaded. The information in the documents does not create an inference Detective Kouba lied when he gave his testimony concerning the $20 bill. We hold the trial court properly denied Mr. Chavez' motion to dismiss the delivery conviction.

---

[1]*Bagley* was a plurality opinion, but a majority agreed with the portion relied upon here.

[2]Mr. Chavez does not contend the prosecutor knowingly made a false representation. Apparently, the prosecutor knew no more about his office's agreement with Mr. Mayfield than did the defense.

Mr. Chavez next contends the prosecutor committed misconduct which affected the jury's verdict. Specifically, the prosecutor inquired of Detective Kouba why he decided to work with Mr. Mayfield as an informant. Detective Kouba cited the fact Mr. Mayfield had a number of things at stake — his employment, his home, and his family. The prosecutor asked: "Things that would cause him to be truthful with you?" The court overruled the defense's objection, and Detective Kouba answered "yes". The prosecutor then asked: "Have you ever caught Howard Mayfield lying to you . . .?" Detective Kouba answered, "Not to my knowledge", before the court sustained the defense's objection. During closing argument, the prosecutor referenced this answer before Mr. Chavez could register an objection. The court instructed the jury to disregard the prosecutor's statement.

The State cannot indirectly vouch for a witness by eliciting testimony from an expert or a police officer concerning the credibility of a crucial witness. It is misconduct for the prosecutor to ask a witness whether he or she believes another witness is lying. Such an opinion invades the province of the jury. *State v. Walden*, 69 Wn. App. 183, 186, 847 P.2d 956 (1993). But even if we were to hold the prosecutor's questions here were improper, Mr. Chavez has not met his burden of showing a substantial likelihood the misconduct affected the verdict. *State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985). The case against Mr. Chavez was based on more than Mr. Mayfield's testimony. The material aspects of his testimony were corroborated by Officers Levno and Foley, and by Detective Kouba. There was no prejudicial error.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.

Review denied at 126 Wn.2d 1012 (1995).