# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>    Respondent,<br><br>    v.<br><br>RANDOLPH THOMAS MCINTYRE,<br><br>    Appellant. | No. 85393-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — A jury convicted Randolph McIntyre of two counts of child molestation in the first degree and two counts of incest in the second degree. McIntyre appeals and argues: (1) the trial court erred in giving a no corroboration jury instruction; (2) the trial court improperly admitted evidence under ER 404(b); (3) the prosecutor committed several instances of misconduct; and (4) that remand is necessary to strike the victim penalty assessment (VPA) and several community custody conditions. McIntyre also makes several arguments in a statement of additional grounds (SAG) filed under RAP 10.10. We remand to strike the VPA and the internet-related community custody condition 10. We otherwise affirm.

I

In spring 2019, McIntyre went to "The Glen," a RV campground in Whatcom County, with his then wife Shannon McIntyre, his son Nathan McIntyre, his daughter-in-law Jackie Martin,[1] and three grandchildren E.M., I.M., and B.M. One night the adults were drinking after the three grandchildren were in bed. E.M. went to bed in the top bunk of the trailer but was unable to fall asleep. When McIntyre went to bed, he asked E.M. if she wanted to sleep on the pullout bed with him. E.M. agreed.

E.M. awoke to McIntyre holding her hand on his penis. E.M. explained that she woke up because her hand was wet. E.M. went to the bathroom to wash her hand. E.M. went back to the top bunk bed and later awoke to McIntyre unzipping her onesie and touching her vagina. E.M. swatted his hand away and zipped her onesie back up.

A few weeks after the incident, E.M. told Jackie and Nathan what happened that night at The Glen. Jackie and Nathan called McIntyre and confronted him. After the call, McIntyre stated "I did what?" and "I should kill myself." McIntyre stopped drinking that day after heavily drinking for 15 years. McIntyre claimed no memory of that night.

Jackie called to report the assault nearly two years later on September 9, 2021. She testified that she waited to report the incident because that was when E.M. was ready to report it.

The State charged McIntyre with two counts of child molestation in the first degree and two counts of incest in the second degree. The jury found McIntyre guilty on all four counts. He was sentenced to 173.5 months.

---

[1] First names are used for Shannon, Jackie, and Nathan to avoid confusion with the appellant. No disrespect is intended.

McIntyre appeals.

II

McIntyre first argues that the trial court erred in giving a no corroboration jury instruction because it was a comment on the evidence and diluted the State's burden of proof. We disagree.

Article IV, section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." A judge is thus prohibited "from 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

We apply a two-step analysis to determine whether a judicial comment requires reversal of a conviction. Levy, 156 Wn.2d at 723. First, we examine the facts of the case to determine whether a court's conduct or remark rises to a comment on the evidence. State v. Sivins, 138 Wn. App. 52, 58, 155 P.3d 982 (2007). If we conclude the court made an improper comment on the evidence, we presume the comment is prejudicial, "and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." Levy, 156 Wn.2d at 723.

Jury Instruction 13, the no corroboration instruction, explained:

In order to convict of person of Child Molestation in the First Degree or Incest in the Second degree, it shall not be necessary that the testimony of the alleged victim be corroborated.

The no corroboration instruction was based on RCW 9A.44.020(1) which states that "[i]n order to convict a person of any crime defined in this chapter[,] it shall not be necessary that the testimony of the alleged victim be corroborated." A jury instruction that does no more than accurately state the law pertaining to an issue is not an impermissible comment on the evidence by the trial judge. State v. Brush, 183 Wn.2d 550, 557, 353 P.3d 213 (2015) (citing State v. Woods, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001)).

While this court has repeatedly expressed misgivings about the use of the no corroboration instruction, we are bound by our Supreme Court's decades old holding in State v. Clayton, 32 Wn.2d 571, 578, 202 P.2d 922 (1949), that the instruction is not an improper comment on the evidence.[2]

In Clayton, the trial court gave the following instruction:

> You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the prosecutrix alone. That is, the question is distinctly one for the jury, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, notwithstanding that there be no direct corroboration of her testimony as to the commission of the act.

32 Wn.2d at 572. The defendant argued that the instruction was a comment on the evidence because "the instruction singles out the prosecutrix from all the other witnesses and tells the jury that the weight of her testimony is such that a conviction can be based upon it alone." Clayton, 32 Wn.2d at 573.

---

[2] See, e.g., State v. Chenoweth, 188 Wn. App. 521, 538, 354 P.3d 13 (2015) (Becker, J., concurring); State v. Zimmerman, 130 Wn. App. 170, 182-83, 121 P.3d 1216 (2005); State v. Kovalenko, 30 Wn. App. 2d 729, 746, 546 P.3d 514, review denied, 559 P.3d 1025 (2024).

Our Supreme Court rejected this argument, holding that the trial court did not err

in giving the no corroboration instruction:

> It is true that, in the instruction of which complaint is here made, the trial court in a sense singled out the testimony of the prosecutrix. However, what the court thereby told the jury was not that the uncorroborated testimony of the prosecutrix in the instant case was sufficient to convict the appellant of the crime with which he was charged, but, rather, that in cases of this particular character, a defendant <u>may be</u> convicted upon such testimony alone, provided the jury should believe from the evidence, and should be satisfied beyond a reasonable doubt, that the defendant was guilty of the crime charged.  That was a correct statement of law.

<u>Clayton</u>, 32 Wn.2d at 574.[3]

McIntyre argues that the instruction here can be distinguished from <u>Clayton</u>

because <u>Clayton</u> used permissive language and had an additional sentence that told

the jury that its job was to determine guilt beyond a reasonable doubt.  But language

similar to that used in <u>Clayton</u> was included in the trial court's instructions.  <u>State v.</u>

<u>Teal</u>, 117 Wn. App. 831, 837, 73 P.3d 402 (2003) ("instructions must be read together

and viewed as a whole.").

Jury instruction 1 explained:

> Our state constitution prohibits a trial judge from making a comment on the evidence.  It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence.  I have not intentionally done this.  If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

The instructions also explained that:

> You are the sole judges of the credibility of each witness.  You are also

---

[3] McIntyre argues that <u>Clayton</u> is no longer good law in light of <u>Brush</u>.  In <u>Brush</u>, the contested instruction was "'the term 'prolonged period of time' means more than a few weeks.'"  183 Wn.2d at 557.  The Supreme Court found that the instruction was an improper comment on the evidence because it resolved a contested factual issue for the jury.  <u>Brush</u>, 183 Wn.2d at 559.  The Court did not expressly or implicitly overrule <u>Clayton</u>, nor did it call into question <u>Clayton</u>.

the sole judges of the value or weight to be given to the testimony of each witness. In assessing credibility, you must avoid bias, conscious or unconscious, including bias based on religion, ethnicity, race, sexual orientation, gender or disability.

And jury instruction 2 advised that the defendant is presumed innocent and that the State has the burden of proving each element beyond a reasonable doubt:

The defendant has entered pleas of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to those elements.

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

McIntyre cannot distinguish Clayton on the basis that it did not emphasize that the jury's job was to determine guilt beyond a reasonable doubt. See State v. Rohleder, 31 Wn. App. 2d 492, 498-99, 550 P.3d 1042 (2024). The instructions told the jury that it had to conclude that the State proved each element beyond a reasonable doubt before it could convict McIntyre, satisfying the requirements of due process.

The jury instructions, read together, expressly advised the jury not to consider any "comment" from the judge and emphasized that jurors are the sole judges of credibility. "[J]urors are presumed to follow the instruction of the court." Sivins, 138 Wn. App. at 61. Accordingly, without more, we presume the jurors heeded the instructions.

For these reasons, we conclude the jury instruction was not a comment on the evidence and did not dilute the State's burden of proof.

III

McIntyre argues that the admission of evidence of prior consensual sexual acts between him and Shannon violated ER 404(b). We disagree.

A

We review a trial court's decision to admit evidence under ER 404(b) using an abuse of discretion standard. State v. Wilson, 144 Wn. App. 166, 177, 181 P.3d 887 (2008). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). If it is a close case, the balance must be tipped in favor of the defendant. Wilson, 144 Wn. App. at 177.

ER 404(b) precludes the admission of "'[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith.'" State v. Foxhoven, 161 Wn.2d 168, 174-75, 163 P.3d 786 (2007) (quoting ER 404(b)).[4] The prohibition "encompasses not only prior bad acts and unpopular behavior, but any evidence offered to 'show the character of a person to prove the person acted in conformity' with that character at the time of the crime." Foxhoven, 161 Wn.2d at 175. ER 404(b) evidence, may, however, be admissible for another purpose, such as proof of motive, plan, or identity. ER 404(b) is not designed "to deprive the State of relevant evidence necessary to establish an essential element of its case," but

_____

[4] ER 404(b) provides in full:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

rather to prevent the State from suggesting that a defendant is guilty because he or she is a criminal-type person who would be likely to commit the crime charged. Foxhoven, 161 Wn.2d at 175 (quoting State v. Lough, 125 Wn.2d 847, 859, 889 P.2d 487 (1995)).

The burden to prove the evidence is admissible under 404(b) is on the proponent of the evidence. State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Accordingly, here, the State had the burden to prove the evidence was admissible.

Washington courts have developed an analytical framework to determine whether evidence is admissible under ER 404(b):

> [T]he trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

Gresham, 173 Wn.2d at 421 (quoting State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

B

The State sought to introduce evidence under ER 404(b), that McIntyre engaged in the same sexual contact E.M. alleged here, with his ex-wife, Shannon, to obtain sexual gratification. Specifically, that McIntyre would take Shannon's hand in his and have her masturbate him with her hand. The trial court reserved ruling on the admissibility of the evidence pretrial, until the State made an offer of proof outside the jury's presence.

Following testimony from Shannon outside the jury's presence, the trial court made its oral ruling allowing the evidence under ER 404(b).[5] The court found by a preponderance of evidence that Shannon's testimony describing McIntyre taking her hand to masturbate him, more likely than not occurred. The court further found that there was legitimate purpose for the evidence because the State had the burden of proving specific intent in a child molestation case—that the acts were done with the purpose of sexual gratification—and that the evidence was relevant to show McIntyre intended to have sexual contact with E.M. when he held E.M.'s hand on his penis to masturbate himself. The trial court also found that the probative value of the evidence outweighed any danger of unfair prejudice. As a result, the court permitted the State to introduce the evidence.

C

McIntyre primarily argues that the trial court erred in admitting the evidence of the prior sexual acts to prove intent. McIntyre argues that the evidence of sexual acts with Shannon simply showed propensity. In response, the State argues that the evidence was relevant because it corroborated that McIntyre's acts with E.M. were intended to obtain sexual gratification.

We conclude that the trial court did not abuse its discretion in admitting the evidence under ER 404(b). First, as the trial court found, there was a preponderance of evidence that the acts described by Shannon occurred. McIntyre confirmed in his interview with Detective Erik Francis of the Whatcom County Sheriff's Office that he and

---

[5] McIntyre asserts that the trial judge did not conduct an ER 404(b) analysis on the record. But the trial judge did in fact conduct the analysis on record after hearing an offer of proof outside the presence of the jury.

Shannon would engage in that conduct. There is nothing in Shannon's testimony, or the record, that would render her testimony unreliable.

Second, there was a purpose for introduction of the testimony and it was relevant to an element of the crime charged. Intent is a proper purpose for admission of evidence under ER 404(b). If the State offers evidence of prior acts to show intent, "there must be a logical theory, other than propensity, demonstrating how the prior acts connect to the intent required to commit the charged offense." State v. Wade, 98 Wn. App. 328, 334, 989 P.2d 576 (1999). "Use of prior acts to prove intent is generally based on propensity when the only commonality between the prior acts and the charged act is the defendant. To use prior acts for a nonpropensity based theory, there must be some similarity among the facts of the acts themselves." Wade, 98 Wn. App. at 335.

Intent must be shown to prove the crime of child molestation. State v. Stevens, 158 Wn.2d 304, 310, 143 P.3d 817 (2006). The State must prove "sexual contact," which is statutorily defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Thus, the State was required to prove that McIntyre touched E.M. for the purpose of sexual gratification. Stevens, 158 Wn.2d 309-10. Evidence that McIntyre engaged in the same contact with his then wife for the purpose of sexual gratification demonstrates his intent.

The testimony also rebuts McIntyre's defense that he could not have committed the acts because of his age and alcoholism. Justin Lehmiller, a social psychologist, testified for McIntyre about the effects age and alcoholism have on a man of McIntyre's age getting an erection and quickly ejaculating. Further, in closing arguments, the

-10-

defense emphasized several times McIntyre's diminished capacity to have done the alleged acts:

> He told us about all of the factors that make it likely that a man like Randy would have trouble achieving an erection his age, his alcoholism, and his intoxication at the time. As men age erectile dysfunction become more prominent because of hormonal and biological changes. He said, excuse me, Dr. Lehmiller told us that 70 percent of men experience it by age 70.
>
> And then there is alcoholism. And Dr. Lehmiller told us that that affects the production of testosterone, which affects desire and arousal and orgasm. He told us that alcohol damages the cardiovascular system and it makes it harder for blood to pump, especially into the penis, harder for the penis to maintain an erection. He told us that the effects of intoxication itself having just consumed a large amount of alcohol, alcohol is a central nervous system depressant, it reduces blood flow to the genitals and it makes it harder to get aroused.

Lastly, McIntyre argues there was significant prejudice and the trial court did not provide the jury with a limiting instruction. If ER 404(b) evidence is admitted with a proper purpose, the party against whom the evidence is admitted, may request a limiting instruction to tell the jury that the evidence is to be used only for the proper purpose and not for the purpose of propensity. Gresham, 173 Wn.2d at 420. But a trial court need not sua sponte give a limiting instruction for ER 404(b) evidence, absent a request for such a limiting instruction. State v. Russell, 171 Wn.2d 118, 124, 249 P.3d 604 (2011). Thus, McIntyre could have chosen to request a limiting instruction, but he failed to do so.

We conclude that the trial court did not abuse its discretion in admitting the testimony under ER 404(b).[6]

---

[6] Even if there was error, it was harmless. Evidentiary errors under ER 404 are not of constitutional magnitude. State v. Yusuf, 21 Wn. App. 2d 960, 974, 512 P.3d 915 (2022). Nonconstitutional error "is harmless unless there is a reasonable probability, in light of the entire record, that the error materially affected the outcome of the trial." State v. Webb, 64 Wn. App. 480, 488, 824

IV

McIntyre next argues that the prosecutor committed misconduct by improperly bolstering E.M.'s testimony and exploiting evidence of McIntyre's heavy alcohol use. We agree that the prosecutor improperly bolstered E.M.'s testimony, but any error was harmless.

A

To establish prosecutorial misconduct, the defendant must establish that the prosecutor's comments were both improper and prejudicial in the context of the entire record and circumstances at trial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). If a defendant establishes that the prosecutor's statements were improper, our review of whether the defendant was prejudiced depends on whether the defendant objected to the improper statements. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant objected at trial, the defendant has the burden to prove that the misconduct "resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." Emery, 174 Wn.2d at 760. But if the defendant did not object, the defendant "is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61.

---

P.2d 1257 (1992); accord State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Chavez, 76 Wn. App. 293, 298, 884 P.2d 624 (1994).

There is not a reasonable probability in light of the entire record that the error materially affected the outcome of trial. McIntyre admitted in his recorded interview with Detective Francis that the acts E.M. described were very similar to the things that Shannon and McIntyre would do in bed. This interview was found to be admissible after a CrR 3.5 hearing because the interview was lawful custodial interrogation, and McIntyre knowingly and voluntarily waived his Miranda rights. The evidence would likely have come in through this interview, even without Shannon's testimony. McIntyre acknowledges the preciseness and similarities in E.M.'s testimony and acknowledges there is a possibility it happened.

B

McIntyre argues first that the prosecutor improperly bolstered E.M.'s testimony by suggesting that intense pretrial defense interviews traumatized her. The State responds that the prosecutor's questions about the defense interviews was relevant to rebut McIntyre's assertion that E.M. was coached by her mother and was fabricating allegations.

During direct examination, the prosecutor asked E.M. about her interviews with defense counsel:

> [Q]: Do you remember sitting down with Defense counsel in December of 2022—
> [A]: Yes.
> [Q]: —to be interviewed about this case?
> [A]: Yes.
> [Q]: Did you have to sit down with them once?
> [A]: Twice.
> [Q]: How was that experience for you?
> [A]: More stress and anxiety, but I felt really angry.
> [Q]: Why did you feel angry?
> [A]: Because they kept repeating their questions and he said to not interrupt him but he kept interrupting me.

The prosecutor continued and E.M. explained that her family was not in the room with her during these interviews. The State asked if E.M. had a difficult time answering the defense's questions. McIntyre objected on relevance grounds and the trial judge overruled the objection. The State continued:

> [Q]: Can you walk us through the difficulty you had?
> [A]: Um, some of the questions, most of the questions were pretty confusing. And I couldn't answer most of them because one of [McIntyre's] lawyers kept cutting me off while I was trying to say my answer and it was really frustrating.
> [Q]: Do you remember what your body was doing during that first interview?
> [A]: Um, shaking a lot.

The prosecutor also asked about another defense interview which E.M. described as "even more annoying than the first time."

McIntyre moved to strike portions of E.M.'s testimony arguing that he has a right under state and federal constitutions to due process and effective assistance of counsel, and that it was inappropriate to cast the defense counsel as aggressive when it was the defense's right and responsibility to question E.M. McIntyre also objected on the ground that the testimony was false, and the defense attorney did not interrupt, and she only had two interviews because they didn't have time to finish the interview the first time. The State responded that E.M. had to describe her traumatic experience five times to strangers, and because the case hinged on E.M.'s credibility, the State should be allowed to ask about her traumatic experience and how she had physical reaction to it.

The trial court overruled the objection and did not strike the testimony, explaining that McIntyre had already highlighted in opening statements that there would be different versions of events and the State's testimony was relating to each different time she talked about it and provided context around those statements.

Because McIntyre objected to the above line of questioning, we review if the comments were improper, and if they were, whether there is a substantial likelihood that it affected the jury's verdict. Emery, 174 Wn.2d at 760. The trial judge is generally in the best position to determine whether the prosecutor's comments were improper and prejudicial. State v. Ish, 170 Wn.2d 189, 195-96, 241 P.3d 389 (2010).

Here, the prosecutor's statements were improper. The prosecutor improperly bolstered E.M.'s testimony. A prosecutor may argue that evidence does not support a defense theory. State v. Lindsay, 180 Wn.2d 423, 431, 326 P.3d 125 (2014). But a prosecutor may not impugn the role or integrity of the defense counsel. Lindsay, 180 Wn.2d at 431-32. But improper statements are not a basis for reversal when they occur as a fair response to defense counsel's arguments or where otherwise provoked. State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). Finally, "'[t]he general common-law rule is that the proponent may not bolster the witness's credibility before any attempted impeachment.'" State v. Bourgeois, 133 Wn.2d 389, 400-01, 945 P.2d 1120 (1997) (quoting EDWARD J. IMWINKELRIED, EVIDENTIARY FOUNDATIONS 86 (2d ed. 1989)).

The prosecutor improperly bolstered E.M. on direct examination by asking about how the defense interviews traumatized her. The bolstering did not respond to McIntyre's cross-examination. Rather, the bolstering occurred while the State conducted direct examination, which is improper. Further, the prosecutor was not permitted to impugn the role of defense counsel because they rightfully conducted interviews with McIntyre's accuser.

But the prosecutor's comments were not prejudicial because there was not a substantial likelihood that the improper comments affected the verdict. McIntyre was able to, and did, effectively cross-examine E.M. after the improper bolstering:

> [Q]: Now, you were interviewed two times in this case by Mr. Marshall; am I correct?
> [A]: Yeah.
> [Q]: This is Mr. Marshall here?
> [A]: Yeah, I'm sorry. Yes.
> [Q]: It's okay. You were interviewed two times by him, correct?
> [A]: Okay.

[Q]: That was because we didn't finish the interview the first time and we had to continue it another day; am I right?
[A]: You're right.

The defense counsel continued:

[Q]: . . . And you knew you could take breaks if you wanted to during that interview; am I right?
[A]: Yes.
[Q]: And, in fact, I think you took a number of breaks. I think you said five or six the other day?
[A]: Five or six, yes.

After a sidebar, the defense counsel continued:

[Q]: [E.M.], you said earlier during that interview Mr. Marshall interrupted you often; do you remember saying that?
[A]: Yes.
[Q]: In fact, Mr. Marshall told you that neither of you should interrupt each other so that the court reporter can do a better job better, didn't he?
[A]: Yes.
[Q]: Now, you came to those interviews with your mother [Jackie]; am I right?
[A]: Yes.

Defense counsel then asked about whether E.M. spoke to Jackie during the breaks she took during the interviews:

[Q]: During the breaks that you took when you were being interviewed by Mr. Marshall, you went out, you left the room, and you went out to talk with your mother, am I correct?
[A]: Only for two.
      . . . .
[Q]: Okay. And your mother told you some things that you could say to answer questions; am I correct?
[A]: She didn't say I had to, she said if I got, if I need to then I could go right ahead. If I wanted to. She wasn't telling me what to do.
      . . . .
[Q]: Okay. Your mother told you that during, when you were being interviewed by the Defense in this case that you could say " I don't know" in response to questions; am I right about that?
[A]: Yes, she did say, yes.
[Q]: And she also told you that you could say "move on"; am I right about that?

[A]: Yes, she did say, yes.

This line of questioning establishes that McIntyre was able to effectively cross-examine E.M. about the defense interviews and any potential coaching by Jackie. Thus, the prosecutor's questioning did not prejudice McIntyre or implicate a due process violation because the defense was able to confront his accuser and impeach her.

C

McIntyre next argues that the prosecutor committed misconduct again in closing argument by insinuating E.M. was more credible because she withstood intense questioning and would not endure it if the allegations were not true. McIntyre also argues it was misconduct for the prosecutor to focus on McIntyre's alcoholism for improper propensity purposes. There was no objection in closing arguments to the State's argument. Thus, we review if they were flagrant and ill intentioned and could not have been cured by an instruction. Emery, 174 Wn.2d at 760-61.

The prosecutor's comments were not flagrant and ill intentioned and could have been cured with an instruction. First, as discussed, the defense had the opportunity to effectively cross-examine E.M. about her trauma and her reactions to the defense interviews. Second, the defense focused much of its case on McIntyre's drinking habits. For example, a theme of the defense's closing argument was that McIntyre was an alcoholic. It was therefore appropriate for the prosecutor to focus on that aspect in closing argument. And lastly, McIntyre has not shown that a jury instruction could not have cured the improper argument.

Thus, none of the prosecutor's comments require reversal.

V

McIntyre argues that the court imposed unauthorized community custody conditions.  We remand to strike the internet-related conditions but otherwise disagree.

A

We review community custody conditions for an abuse of discretion, and will reverse them only if they are "manifestly unreasonable."  State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).  "A trial court abuses its discretion if it imposes an unconstitutional condition."  Padilla, 190 Wn.2d at 677.  A trial court's discretion to resentence on remand is constrained by the scope of our court's mandate.  State v. Kilgore, 167 Wn.2d 28, 42, 216 P.3d 393 (2009).

As a condition of community custody, sentencing courts may order offenders to "[c]omply with any crime-related prohibitions."  RCW 9.94A.703(3)(f).  A crime-related prohibition is one that "directly relates to the circumstances of the crime for which [an individual] has been convicted."  RCW 9.94A.030(10).  The condition "need not be identical to the crime of conviction, but there must be 'some basis' for connecting the condition to the defendant's crime."  State v. Geyer, 19 Wn. App. 2d 321, 331, 496 P.3d 322 (2021) (quoting State v. Nguyen, 191 Wn.2d 671, 684, 425 P.3d 847 (2018)).  We review the factual basis for crime-relatedness issues under a "substantial evidence standard."  Padilla, 190 Wn.2d at 683.

B

McIntyre challenges community custody condition 8, which requires:

8. You must consent to DOC home visits to monitor your compliance with supervision.  Home visits include access for the purposes of visual

inspection of all areas of the residence in which you live or have exclusive/joint control/access.

McIntyre argues that condition 8 requires him to consent to warrantless searches and is therefore unconstitutionally overbroad and violates his constitution rights. The State responds that the condition that he consent to home visits is not yet ripe for review.

Our Supreme Court addressed the ripeness of an appeal of a nearly identical condition in State v. Cates, 183 Wn.2d 531, 354 P.3d 832 (2015). There, the contested condition "require[d] Mr. Cates to 'consent' to searches by his CCO, merely upon the CCO's request, without specifying that the search must be based on reasonable cause." Cates, 183 Wn.2d at 535. The court concluded that a challenge to the condition was not ripe for review and the court could only examine the merits of Cates's claim if the State attempted to enforce the condition after Cates's release from confinement. Cates, 183 Wn.2d at 535-536. (Emphasis added.)

McIntyre does not "suffer [a] significant risk of hardship" if we decline to review the merits of that condition at this time. Cates, 183 Wn.2d at 536. Nothing in the condition indicates that McIntyre needs to take a specific action upon release to comply with the condition. Cates, 183 Wn.2d at 536. We decline to review the condition at this time.

C

McIntyre challenges community custody condition 10, which requires:

10. You may not own/use/possess an internet capable device without first meeting with your CCO and fully and accurately completing the "Social Media and Electronic Device Monitoring Agreement" DOC Form # 11-080. You must install an internet monitoring program, on devices capable of

-19-

using the software, at your own expense, and your CCO must be your designated accountability partner. The requirements and prohibitions on this completed form will remain in effect until removed or modified in writing, signed, and dated by you and your CCO. (The purpose of this monitoring software is to ensure you are not having contact with any known victim, identified prohibited class of people (minors), or accessing sexually explicit material as defined in condition #11.) Any approved device is subject to search.

McIntyre challenges the condition because it is not crime related. The State concedes the internet access restriction is improper.

We accept the State's concession. The prohibitions on internet access are not crime related. There is no evidence that McIntyre used internet or video equipment in the commission of his crime. There is no basis for connecting the condition to McIntyre's crime.

VI

McIntyre argues that the VPA should be stricken. The State agrees the case should be remanded to strike the VPA.

In 2023, the legislature amended RCW 7.68.035 to prohibit courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1. Our courts have held that recent amendments to statutes governing legal financial obligations apply to matters pending on direct appeal. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

We accept the State's concession and strike the VPA.

VII

McIntyre raises several additional grounds for review in his SAG. We address each in turn.

A

McIntyre argues that count III and IV are unfair because they are an example of overcharging by the prosecution. But McIntyre does not cite case law nor explain how counts III and IV resulted from prosecutorial vindictiveness or overcharging. McIntyre merely argues that it was "unfair." We cannot review a SAG claim if it is too vague to properly inform the court of the claimed error. State v. Hand, 199 Wn. App. 887, 901, 401 P.3d 367 (2017). Without more, there is no evidence that the additional charges violated McIntyre's rights.

B

McIntyre argues that Shannon's testimony was coerced by Jackie because Shannon testified that Jackie told her it would be difficult to continue a relationship with her if she continued to have a relationship with McIntyre.

It is for the jury to determine, in light of all impeaching evidence available to the defendant, whether a witness has given false testimony under improper influence. State v. Shaffer, 72 Wn.2d 630, 634, 434 P.2d 591 (1967); see also Ish, 170 Wn.2d at 196 ("[w]hether a witness has testified truthfully is entirely for the jury to determine."). Here, there is no evidence that Shannon was coerced or under any improper influence. The defense was free to inquire about any bias or interest in cross examination, which it did.

C

McIntyre contends that the recorded interview with Detective Francis should not have been admitted into evidence because the interview was conducted after he had gone 38 hours without any sleep and was not given his medication.

Before interrogating a suspect in custody, law enforcement must inform the suspect that he has the "right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning." Miranda v. Arizona, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). After warnings have been given, "the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." Miranda, 384 U.S. at 479.

We must consider the totality of circumstances in determining whether a defendant voluntarily waived their Miranda rights. State v. Allen, 63 Wn. App. 623, 626, 821 P.2d 533 (1991). It is not necessary that the waiver is expressly oral or written; but the court can infer waiver if the defendant is informed of their Miranda rights, understands those rights, and chooses to volunteer information in absence of duress, promises, or threats. State v. Terrovona, 105 Wn.2d 632, 646-47 716 P.2d 295 (1986). Further, a suspect can "voluntarily waive his Miranda rights even when he is in the hospital, on medication, and in pain." State v. Butler, 165 Wn. App. 820, 269 P.3d 315 (2012) (quoting United States v. George, 987 F.2d 1428, 1430 (9th Cir. 1993)).

The court conducted a CrR 3.5 hearing on the statements. The court heard testimony from both Detective Francis and McIntyre. The court ruled that McIntyre knowingly and voluntarily waived his rights. We agree.

Detective Francis read McIntyre his Miranda rights. McIntyre stated that he understood those rights and that the interview was being recorded. McIntyre made no statements concerning a lack of sleep or medication during his interview with Francis.

He also did not express that he was unable to contact an attorney, contrary to his testimony during the CrR 3.5 hearing. Further, toward the end of the interview, McIntyre indicates that his lawyer in Canada told him to remain silent, and he chose not to do so.

For these reasons, we disagree that the recorded interview was improperly admitted.

D

McIntyre argues that E.M.'s trauma was over-emphasized. As McIntyre notes, this argument was encompassed in his attorney's opening brief. When a SAG contains alleged errors that "have been thoroughly addressed by counsel" they are "not proper matters for [the] statement of additional grounds under RAP 10.10(a)." State v. Thompson, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

E

McIntyre argues that E.M.'s psychology records and school records should have been disclosed to the defense. But McIntyre does not adequately explain the alleged error. There is no evidence that McIntyre's attorney requested records and was denied. We will not consider a SAG if it does not adequately inform the court of the nature and occurrence of the alleged errors. RAP 10.10(c).

F

McIntyre asserts that the sentence given to him violates the prohibition on cruel punishment under article I, section 14, of the Washington constitution because he was sentenced to four crimes based on "one course of action over one time period."

For sentencing purposes, two or more criminal offenses count as one crime if the offenses encompass the "same criminal conduct." RCW 9.94A.589(1)(a). Crimes

constitute the same criminal conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Unless these elements are met, the crimes are not the same criminal conduct. State v. Chenoweth, 185 Wn.2d 218, 220, 370 P.3d 6 (2016). A sentencing court's determination of same criminal conduct will not be disturbed on appeal unless the court abused its discretion or misapplied the law. Chenoweth, 185 Wn.2d at 220-21.

The trial court considered Chenoweth and found that incest and child molestation are separate charges and do not merge for the purposes of sentencing. The court also rejected the argument that the two acts constituted a continuous course of conduct. The court reasoned there was sufficient time in the course of behavior to pause and form a new intent. The court sentenced McIntyre to 173.5 months which is the middle point of the standard range 149 to 198 months.

The trial court did not abuse its discretion in considering the four charges as separate acts for the purposes of sentencing. First, Chenoweth explicitly held that "the same act constituting rape of a child and incest is not the same criminal conduct for purposes of sentencing." 185 Wn.2d at 224. Thus, the trial court properly considered the rape and incest as separate criminal conduct for the purposes of sentencing.

Second, the trial court found that the other two counts should be considered separately because there was adequate time for McIntyre to consider his actions and form a new intent. The first incident occurred after McIntyre asked E.M. to sleep in the pullout bed with him. After E.M. washed her hands, she went to sleep in the top bunk bed. Then, after she fell asleep again, McIntyre unzipped her onesie and touched her

-24-

vagina. The trial court properly found that there was sufficient time for McIntyre to form a new intent.

G

McIntyre argues that the incest charges were never proven because there was no paternity test done.

Due process requires that the State prove every element of a crime beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). To determine whether sufficient evidence supports a conviction, we must "view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014).

The relevant statute provides:

A person is guilty of incest in the second degree if he or she engages in sexual contact with a person whom he or she knows to be related to him or her, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.

RCW 9A.64.020(2)(a).

The trial court instructed the jury:

To convict the defendant of the crime of Incest in the Second Degree, as charged in count two, on an occasion separate and distinct from that charged in counts three and four, each of the following elements must be proved beyond a reasonable doubt:

(1) That on or about 24th of December, 2018 to the 24th of May, 2019, the defendant engaged in sexual contact with E.M.;
(2) That E.M. was related to the defendant as a descendent of either the whole or the half blood;
(3) That at the time the defendant knew the person with whom he was having sexual contact was so related to him; and
(4) That any of these acts occurred in the State of Washington

The court also defined descendent as "any child or grandchild of the defendant."

McIntyre fails to offer Washington authority supporting his claim that paternity testing is required to prove the crime of incest. It is also well established law in Washington that uncorroborated testimony of a complaining witness in an incest case is enough to sustain a conviction. See, e.g., State v. Davis, 20 Wn.2d 443, 447, 147 P.2d 940 (1944); State v. Coffey, 8 Wn.2d 504, 505-06, 112 P.2d 989 (1941).

Taking the State's evidence as true, a rational trier of fact could find McIntyre guilty beyond a reasonable doubt for the crime of incest in the second degree.

H

McIntyre argues that counts II and IV were unsupported based on an improper interview and contradiction. McIntyre contends Detective Francis's interview with E.M. that took place in an open park with no child forensic interviewer was improper and it contradicted E.M.'s first interview.

McIntyre cites no Washington law to support his contention that the second interview with E.M. was improper. A prosecutor may add charges against a criminal defendant at any time before trial so long as their motivation is not vindictive or based on unjustifiable standards. State v. Penn, 32 Wn. App. 911, 914, 650 P.2d 1111 (1982). Because nothing in the record supports McIntyre's contention and because he cites no authority, we find no basis for reversal.

We remand to strike the VPA and the internet-related community custody condition 10. We otherwise affirm.

WE CONCUR:

Mann, J.

Feldman, J.

Coburn, J.